## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Metrom Rail, LLC<br><br>              Plaintiff,<br><br>v.<br><br>Massachusetts Bay Transportation Authority and Piper Networks, Inc.<br><br>              Defendants. | Case No. 1:25-cv-11446-ADB |

## DEFENDANT PIPER NETWORKS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, TRANSFER VENUE

Pursuant to 28 U.S.C. § 1406(a), Fed. R. Civ. P. 12(b)(3) and 12(b)(6), Defendant Piper Networks, Inc. ("Piper") respectfully requests that the Court dismiss the Complaint filed by Plaintiff Metrom Rail, LLC ("Metrom")'s against Piper and Massachusetts Bay Transportation Authority ("MBTA") (collectively, "Defendants") or, in the alternative, to transfer venue as to Piper to the District Court for the Southern District of New York.

## I.    INTRODUCTION

The Complaint alleges that Piper purportedly directly infringes U.S. Patent No. 9,043,131 (the "'131 Patent") and U.S. Patent No. 9,731,738 (the "'738 Patent") (collectively, the "Asserted Patents") "by offering and selling the Piper GLTPS to the MBTA" and "by making and using the Piper GLTPS," and indirectly infringes based on MBTA's purported use of the Piper GLTPS  *See* Dkt. 2 (Complaint) at ¶¶ 75, 88.  Yet Metrom fails to plead any facts that plausibly allege that either Piper or MBTA practices each limitation of any asserted claim of either Asserted Patent. Metrom instead effectively admits that it does not have a sufficient factual basis to plausibly allege infringement by relying on unsupported allegations that it "believes, or believes it will likely have evidentiary support after a reasonably opportunity for discovery" that the accused Piper GLTPS purportedly meets *nearly every single limitation* of the Asserted Patents' claims.  *See id.* at 19-25 (claim chart for '738 Patent) and 28-31 (claim chart for '131 Patent).  Such allegations fail to plausibly allege infringement and alone provide sufficient basis to dismiss Metrom's claims.

Metrom, however, fails to state a claim in another regard.  With respect to the only limitation where Metrom does not make the speculative, deficient allegations discussed above, Metrom fails to make any allegation at all.  *Id.* at 23 (failing to include any allegation that the Piper GLTPS purportedly meets the limitation of claim 1 of the '738 Patent requiring it to "observe operation of the vehicle to evaluate compliance with the rule").  Moreover, Metrom cannot and

does not sufficiently allege infringement of claim 17 of the '131 Patent for the additional reason that it fails to make any factual allegation (let alone one meeting the plausibility standard) that the Piper GLTPS has "a first wireless communications antenna" that transmits the actual calculated separation distance, which the PTAB explicitly found the claim requires. *See* Declaration of Nicole S. Cunningham ("Cunningham Dec.") at ¶ 2, Ex. A (Final Written Decision in *Inter Partes Review* of '131 Patent); *see also* Request for Judicial Notice ("Request"). These empty allegations are fatal to Metrom's patent infringement claims.

For at least these reasons, Metrom's allegations are deficient and its Complaint should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

Pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a), Metrom's claims against Piper should further be dismissed for the independently sufficient reason that venue is improper or, in the alternative, transferred to the District Court for the Southern District of New York. Under 28 U.S.C. § 1400(b), a claim for patent infringement may only be brought in a judicial district where the defendant either (1) resides or (2) commits the alleged acts of infringement *and* maintains a regular and established place of business. Piper does neither, nor has Metrom even alleged that it does. In fact, Metrom's *only* allegation in support of venue in this district merely states "[v]enue is proper under 28 U.S.C. §§ 1391(b)-(d) and 1400(b)." Dkt. 2 at ¶ 5. Metrom makes *no factual allegations whatsoever* purporting to support venue here. Under governing Federal Circuit law, Metrom's bare citation to statutes is plainly insufficient to show that venue is proper against Piper here. Metrom alleges no facts, nor are there any such facts that would establish that venue is proper against Piper -- a Delaware corporation with no regular and

established place of business in this district.  The Court should dismiss the claims against Piper on this further basis as well.[1]

## II.    BACKGROUND

On May 21, 2025, Metrom filed its Complaint alleging two counts for patent infringement against MBTA and Piper.  Dkt. 2.  Metrom's Complaint alleges that Piper purportedly directly infringes the Asserted Patents by offering, selling, making, and using the Piper GLTPS, and indirectly by MBTA's use of the Piper GLTPS.  Dkt. 2 at ¶¶ 75, 88.

### A.    Metrom's Deficient Allegations Regarding the '738 Patent

Count I asserts infringement of the '738 Patent.  Asserted claim 1 of the '738 Patent recites a "system for evaluating vehicle operation compliance."  Dkt. 2-3 ('738 Patent) at 33:13.  The claimed system includes a control signal interface subsystem and a vehicle-mounted subsystem. *Id.* at 33:15-37.  Metrom ambiguously alleges that "[w]here implemented on the MBTA Green Line, the Piper GLTPS *will* infringe at least one claim of the '738 patent, either literally or by equivalence, either alone or as installed in the MBTA system."  Dkt. 2 at ¶ 74 (emphasis added). Metrom's claim chart that follows Paragraph 74 of the Complaint alleges that the Piper GLTPS will infringe, relying almost entirely on statements such as "Metrom believes, or believes it will

---

[1] Metrom previously filed patent claims against Piper in the District of Delaware asserting the same '131 Patent asserted against Piper here, which case was transferred to the Southern District of New York and remains stayed in that Court pending an ongoing IPR appeal at the Federal Circuit. *See Metrom Rail, LLC v. Ground Transportation Systems USA, Inc. et al.*, Case No. 1:23-cv-02920-DLC (S.D.N.Y.).  In that New York case, Metrom has additionally repeatedly represented to Piper and the New York Court that it will amend its claims to also assert the '738 Patent against Piper in that duplicative, first-filed New York litigation.  *Id.* at Dkt. 24-25, 48, 50. Accordingly, Metrom's claims against Piper here asserting substantially overlapping and, in fact, nearly identical allegations that have long been subject to litigation in New York additionally should be transferred and/or stayed under at least the first-filed and duplicative litigation doctrines, as will be addressed in Piper's forthcoming motion to transfer or, in the alternative, stay this litigation in favor of the first-filed case pending in the Southern District of New York.

likely have evidentiary support after a reasonable opportunity for discovery" that the Piper GLTPS

will meet each particular limitation. *Id*. at 19-25 (relying on mere belief that discovery will "likely"

show the Piper GLTPS meets the claim eight times in a single claim chart). And as deficient as

this bare allegation is, Metrom fails to even muster it when arguing that the vehicle-mounted

subsystem "observe operation of the vehicle to evaluation compliance with the rule" requirement

is somehow met. *Id*. at 23. Overall, the Complaint alleges no facts to plausibly assert infringement

of this limitation by the accused Piper GLTPS. *Id*. at 23.

###### B.    Metrom's Deficient Allegations Regarding the '131 Patent

Count II asserts infringement of the '131 Patent. The '131 Patent is generally directed to

train collision avoidance systems. In particular, asserted claim 17 of the '131 Patent recites a "rail

vehicle module mountable on a first rail vehicle" that has a transponder sensor module. Dkt. 2-2

('131 Patent) at 32:45-47. The claimed transponder sensor module has a radio communication

unit operable to employ time of flight techniques to detect a separation distance between a first

and second rail vehicle, a first wireless communications antenna operable to send and receive data

representing the separation distance over the air, a global positioning system unit a control

electronics module in communication with the transponder sensor module, and a user interface for

an operator. *Id*. at 32:47-67. Metrom's Complaint admits that Metrom has no current information

to support infringement of the claim 17, but instead for each of the limitations above asserts only

that "[w]here implemented on the MBTA Green Line, Metrom believes, or believes it will likely

have evidentiary support after a reasonable opportunity for discovery, that the Piper GLTPS will

infringe at least one Confirmed Claim of the '131 patent, either literally or by equivalence, either

alone or as installed in the MBTA system." Dkt. 2 at ¶ 87. Similarly, Metrom's claim chart that

follows this paragraph admits that it has no information to support infringement of *any* of the

limitations of asserted claim 17, instead repeatedly asserting as to *each and every* limitation "it will likely have evidentiary support after a reasonable opportunity for discovery" that the limitations are met.  *Id*. at 28-31.

### C.    PTAB Expressly Requires Transmission of Separation Distance Between Cars to Infringe '131 Patent

On June 18, 2024, the PTAB issued a Final Written Decision, of which this Court may take judicial notice, finding all claims of the '131 Patent unpatentable except claims 17-20.  *See* Cunningham Dec. at ¶ 2, Ex. A (Final Written Decision); *see also* Request.  The PTAB allowed those claims to survive based on an explicit finding that the claims require that the separation distance between the two rail cars be transmitted by the first wireless communications antenna to the other car, as opposed to, for example, a controller on the receiving end determining the separation distance.  Cunningham Dec. at ¶ 2, Ex. A at 63-64.

### D.    Metrom's Venue Allegation is Deficient, and Piper Neither Resides in Nor Has A Regular and Established Place of Business in Massachusetts

Metrom makes only a single allegation in its Complaint regarding venue, stating only that "[v]enue is proper under 28 U.S.C. §§ 1391(b)-(d) and 1400(b)."  Dkt. 2 at ¶ 5.  Metrom does not allege that Piper resides in this district, nor does it allege any facts that could possibly suggest that Piper has a regular or established place of business in Massachusetts.  To the contrary, Metrom alleges that Piper is incorporated in Delaware, headquartered in San Diego, and "Piper represents that it has locations in New York City, Wilmington, DE, Dallas, TX and Atlanta, GA."  *Id*. at ¶¶ 3, 29-30.

As Metrom recognizes, Piper is a Delaware corporation with a principal place of business in San Diego, California.  *See* Declaration of Cheryl Doherty ("Doherty Dec.") at ¶ 3.  Piper does not have and has never had a place of business in Massachusetts.  *Id*. at ¶ 4.  Piper does not have and has never had an office or other physical presence in the state, neither through owning nor

leasing premises in the state. *Id*. Nor has Piper ever had a telephone number or listing in Massachusetts, or maintained any bank accounts there. *Id*.

As of the date Metrom's Complaint was filed, on May 21, 2025, Piper employed only a single, remote employee in Massachusetts, who merely happened to reside there by his personal choice and further ceased working for Piper on that same date. *Id*. at ¶ 5. That single employee worked from his home in Brimfield, Massachusetts, and not from a Piper office. *Id*. He was allowed to work from anywhere, Piper did not dictate or influence where he resided, and Piper was indifferent to where he chose to reside as a remote employee. *Id*. Piper did not have any role in selecting his location, nor was he hired due to his presence in Massachusetts. *Id*. Likewise, Piper did not condition his continued employment in any way on his remaining in Massachusetts, and he could move his residence at-will. *Id*. Similarly, Piper did not place any importance, weight, or requirement on having him reside in Massachusetts, and his presence there was immaterial to Piper and its customers. *Id*. Piper did not pay any part of his rent or mortgage, nor did it own, lease or rent any part of his residence. *Id*. He neither stored inventory at his residence nor received support, whether technical, administrative, or secretarial, from vendors with the District of Massachusetts. *Id*. Except for that single employee, Piper did not have any employee, officer, director, sales or other representative in Massachusetts as of the date Metrom's Complaint was filed. *Id*. at ¶ 6.

## III.    LEGAL STANDARD

### A.    Failure to State a Claim on Which Relief May Be Granted

A complaint cannot survive a motion to dismiss unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This "facial plausibility" standard requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 545. "Factual

allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545. Boilerplate language is insufficient under the Supreme Court's plausibility standard. *Id.* A court should dismiss a case when the factual allegations "have not nudged their claims across the line from conceivable to plausible." *Id*.

Prosecution histories, including proceedings before the PTAB such as *inter partes review*, are part of the intrinsic record of the patent and thus subject to judicial notice. *See, e.g., Grecia Estate Holdings LLC v. Meta Platforms, Inc*., 605 F. Supp. 3d 905, 915 (W.D.T.X. 2022) ("Thus, this Court can—and does—take judicial notice[] of Grecia's PTAB communications during IPR to evaluate whether Grecia adequately pleaded infringement."); *see also Uniloc USA, Inc. v. ADP, LLC*, 772 F. App'x 890, 898 n.3 (Fed. Cir. 2019) ("The prosecution history is part of the intrinsic record of the patent" and "thus subject to judicial notice[] and may be considered in our de novo review of the district court['s]" ruling on a motion to dismiss); *Aylus Networks, Inc. v. Apple, Inc*., 856 F.3d 1353, 1362 n.3 (Fed. Cir. 2017) ("The prosecution history also includes proceedings before the Patent Trial and Appeal Board (the 'PTAB'), such as *inter partes review*.").

### B.    Improper Venue Pursuant to Fed. R. Civ. P. 12(b)(3)

Under Rule 12, a party may move to dismiss a civil action for improper venue. Fed. R. Civ. P. 12(b)(3). Whether venue is proper under § 1400(b) is an issue unique to patent law and is governed by Federal Circuit law. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1012 (Fed. Cir. 2018). Venue in a patent case against domestic corporations is governed exclusively by 28 U.S.C. § 1400(b), which provides: "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." For purposes of Section 1400(b), a defendant which is a domestic corporation "resides" only in its state of incorporation. *See TC Heartland*

*LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1517 (2017).  Venue may also be proper

under Section 1400(b) if the domestic defendant has committed acts of infringement and has a

regular and established place of business in the district.  28 U.S.C. § 1400(b).  If venue is improper,

the Court must transfer or dismiss the case.  28 U.S.C. § 1406(a). The Court may transfer the case

to a district where venue is proper.  28 U.S.C. § 1406(a).  "[T]he plaintiff has the burden of

establishing proper venue under 28 U.S.C. § 1400(b)."  *Westech Aerosol Corp. v. 3M Co.*, 927

F.3d 1378, 1382 (Fed. Cir. 2019); *In re ZTE*, 890 F.3d at 1013.

## IV.    METROM'S COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO PLEAD A PLAUSIBLE CLAIM FOR INFRINGEMENT[2]

Metrom's Complaint fails to allege a plausible infringement claim.  Stating a viable claim

for infringement requires Plaintiff to plead facts that plausibly suggest that an accused product

meets each limitation of an asserted claim.  *Washington v. Caterpillar Inc*., 2025 U.S. Dist. LEXIS

44653 at *4 (W.D.T.X. Mar. 3, 2025) (citing *Profectus Tech. LLC v. Huawei Techs. Co.*, 823 F.3d

1375, 1382 (Fed. Cir. 2016) (stating that the infringement inquiry asks if an accused device

contains every claim limitation or its equivalent)).  Metrom falls well short of this standard, and

fails to plead facts to plausibly suggest that the accused Piper GLTPS system practices *any of the*

*claim limitations* of any of the asserted claims, let alone how it purportedly meets *each limitation*

of the asserted claims.

### A.    Metrom's Count I (Alleged Infringement of '738 Patent) Should Be Dismissed

With regard to claim 1 of the '738 Patent, Metrom's claim charts only generally consider

the MBTA's Technical Specifications for a GLTPS, which do not plausibly suggest that *the*

*accused Piper GLTPS* meets any limitation. Dkt. 2 at 19-25, 28-31 (reciting allegations for

---

[2] This Section is substantially identical to Section IV of Defendant MBTA's Motion to Dismiss, concurrently filed herewith.

multiple limitations regarding "[t]he GLTPS as specified by the MBTA").  Indeed, nowhere do Metrom's allegations point to even a single fact regarding what the purported Piper GLTPS *actually* does, let alone how it plausibly meets any of the requisite claim limitations.  *See id.*  The MBTA specifications on which Metrom entirely relies do not plausibly suggest infringement of any limitation, let alone all of the limitations.  If the specifications plausibly suggest anything at all, the most they could purportedly suggest is what MBTA asked for at a particular point in time – not whether the Piper GLTPS actually satisfied them, whether they changed, or were implemented by Piper in a different way that would not meet the claim.

Other than its entirely insufficient reliance on MBTA's purported specifications, Metrom's only other allegation as to nearly every single limitation of claim 1 of the '738 Patent is that Metrom "believes, or believes it will likely have evidentiary support after a reasonable opportunity for discovery" that the accused Piper GLTPS purportedly meets the limitation.  Dkt. 2 at 19-25 (relying only on its purported belief regarding what discovery will *likely* show for every limitation except the limitations requiring the vehicle-mounted subsystem be configured to "observe operation of the vehicle to evaluate compliance with the rule").  Merely asserting that discovery will (hopefully) reveal information plausibly supporting infringement is purely speculative and insufficient to plead a plausible claim for relief.  The Supreme Court's "facial plausibility" standard requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 545.  Thus, Metrom's attempt to rely on its mere *belief* that potential future discovery might reveal infringement is not permissible.  *See, e.g., DataWidget, LLC v. Rocket Sci. Grp. LLC*, No. 1:20-cv-02961-SDG, 2022 WL 671527, at *3-4 (N.D. Ga. Mar. 7, 2022) (dismissing patent infringement count under Rule 12(b)(6) where plaintiff "only speculates as to how [defendant]" infringes and noting that, although the plaintiff "can do

little more than speculate when it has no insight into [defendant's] operations, and that it is difficult to gain such insight without the access afforded by civil discovery," "allowing this case to proceed based on assumptions would impermissibly lower the pleading standard"); *see also McCloskey v. Mueller*, 446 F.3d 262, 271 (1st Cir. 2006) ("[P]laintiffs should not be permitted to conduct fishing expeditions in hopes of discovering claims that they do not know they have.").

There is only limitation of the '738 Patent's claim 1 of the '738 Patent where Metrom does not state that it "believes it will likely have evidentiary support after a reasonable opportunity for discovery" – but here, too, Metrom fails to plead sufficient facts. Specifically, Metrom fails to make any allegation whatsoever that *the accused Piper GLTPS* satisfies the limitation requiring that the vehicle-mounted subsystem be configured to "observe operation of the vehicle to evaluate compliance with the rule." *Id.* at 23 This failure to plead sufficient facts is fatal to Metrom's claim for infringement of the '738 Patent. This, in addition to the deficiencies regarding Metrom's mere reliance on hope that potential future discovery might reveal infringement as to the remaining limitations, instead of any factual basis plausibly suggesting infringement by the accused Piper GLTPS, show that Metrom fails to plausibly plead that the limitations of the asserted claims are met.

**B.    Metrom's Count II (Alleged Infringement of '131 Patent) Should Be Dismissed**

Metrom's allegations regarding the '131 Patent are even more deficient. Metrom's allegations for at least four of claim 17's limitations do not even allege facts regarding MBTA's purported specifications, instead relying *entirely* on conclusory, speculative allegations that Metrom "believes, or believes it will likely have evidentiary support after a reasonable opportunity for discovery" that the Piper GLTPS will meet the limitation. Dkt. 2 at 28-31 (relying only on "a reasonable opportunity for discovery" to meet at least the following limitations: "transponder

sensor module," "a first wireless communications antenna operable to send and receive data representing the separation distance over the air," "a global positing system unit…," and "a control electronics module…"). As with its '738 Patent allegations, Metrom's mere belief that discovery might reveal infringement in the future is not enough. *Twombly*, 550 U.S. at 545; *DataWidget*, 2022 WL 671527 at *3-4. Thus, Metrom's allegations as to the '131 Patent are wholly deficient, do not plausibly suggest that the accused Piper GLTPS infringes at all, and fall far short of plausibly showing infringement.

Metrom's allegations as to the '131 Patent are additionally deficient and should be dismissed because Metrom cannot and does not plausibly allege that the accused Piper GLTPS meets a specific limitation: "a first wireless communications antenna operable to send and receive data representing the separation distance over the air." Dkt. 2 at 29-30. All claim limitations must be met, but Metrom simply ignores what the PTAB has clarified a product must do to meet this limitation. In allowing claim 17 to survive in its Final Written Decision in the *inter partes review* of the '131 Patent, the PTAB narrowly interpreted this limitation to require that the first wireless communications antenna actually transmit the separation distance to the other car, which Metrom cannot possibly show for infringement and in fact fails to present any evidence of in its claim charts. *See* Cunningham Dec., Ex. A at 63-64 (Final Written Decision); *see also* Request. Metrom ignore's the PTAB's Decision, and fails to plead any facts plausibly suggesting that the Piper GLTPS has a first wireless communications antenna that transmits the separation distance to the other car. Rather, Metrom's only allegations as to this element are that Piper tags "use of Time of Flight (ToF) calculations to determine precise distances" and "including UWB antennas and a UWB radio." Dkt. 2 at 29-30. But the PTAB expressly explained that calculating using time of flight and UWB are not sufficient to meet this limitation, and Metrom's allegations do not plausibly

suggest that the Piper tags (or anything else) actually transmit a separation distance to the other car as the PTAB required. Metrom's infringement claim for the '131 Patent should also be dismissed on this additional, independently sufficient basis.

### C.    Metrom's Conclusory Doctrine of Equivalents Pleadings Cannot Save Its Complaint

Finally, Metrom's doctrine of equivalents allegations cannot save its deficient Complaint. Both of Metrom's infringement counts in the Complaint merely allege that the "Piper GLTPS will infringe … either literally *or by equivalence*, either alone or as installed in the MBTA system." Dkt. 2. At ¶¶ 74, 87 (emphasis added). Other than this conclusory, boilerplate language, the Complaint fails to make any allegation from which a reasonable inference could be drawn that there is infringement under the doctrine of equivalents. Without plausible factual allegations as to infringement under the doctrine of equivalents, the Court should dismiss Metrom's claims on this additional basis as well. *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1354 (Fed. Cir. 2018) (sufficiency of pleading infringement under the doctrine of equivalents is subject to the *Twombly/Iqbal* standard).

## V.    METROM'S CLAIMS AGAINST PIPER SHOULD BE DISMISSED OR, IN THE ALTERNATIVE, TRANSFERRED FOR IMPROPER VENUE

Metrom has not alleged, and cannot demonstrate, that venue is proper in this judicial district. Piper neither "resides" nor has a "regular and established place of business" in this district, making venue improper here. 28 U.S.C. § 1400(b); *see also TC Heartland*, 137 S. Ct. at 1516. The Court should therefore dismiss Metrom's claims or transfer this case to the Southern District of New York, a venue that would be proper and where Metrom has long-pending claims against Piper regarding the same '131 Patent asserted here, and where Metrom has represented multiple times to Piper and the New York Court that it will amend to add the '738 Patent. 28 U.S.C. § 1406(a).

### A.     Venue is Not Proper in this Judicial District

Metrom fails to set forth *any factual basis* upon which this Court may find venue is proper under § 1400(b) – let alone sufficient factual basis – nor can Metrom meet its burden of establishing proper venue in this district. Metrom *makes only a single allegation* in its entire Complaint as to venue, stating merely that "[v]enue is proper under 28 U.S.C. §§ 1391(b)-(d) and 1400(b)." Dkt. 2 at ¶ 5. Metrom's bare citation to the statutes, without any allegation whatsoever that could possibly support that Piper resides in or has a regular and established place of business in this district, is wholly insufficient for pleading venue under § 1400(b). *See, e.g., Westech Aerosol Corporation v. 3M Company*, 927 F.3d 1378, 1382 (Fed. Cir. 2019) (affirming dismissal for improper venue where plaintiff failed to plead facts showing that defendant had a regular and established place of business in the district and instead offered conclusory statements that parroted the statutory language). Moreover, as demonstrated below, Metrom cannot demonstrate any set of facts that supports venue here because Piper does not reside in this district, nor does it have a regular and established place of business here. Metrom's Complaint should be dismissed.

### 1.     Piper Does Not Reside in the District of Massachusetts

For purposes of 28 U.S.C. § 1400(b), a company resides only in the location where it is incorporated. *TC Heartland*, 137 S. Ct. at 1520 ("residence" as used in the patent venue statute "refers only to the State of incorporation"). Piper is incorporated in Delaware, as Metrom itself alleges. Dkt. 2 at ¶ 3, 29; *see also* Doherty Dec. at ¶ 3. Therefore, Piper does not "reside" in this District and venue is not proper under the first prong of § 1400(b).

### 2.     Piper Does Not Have a Regular and Established Place of Business in the District of Massachusetts

Because the first part of § 1400(b) is inapplicable, Metrom must rely on the second part

of the patent venue statute, which requires that Piper "has committed acts of infringement and has a regular and established place of business in the district" – which it cannot. Venue is therefore also improper under the second prong of § 1400(b).

For a defendant to have a "regular and established place of business," it must meet a*ll three parts* of the Federal Circuit's three-part test: (1) it must have a physical place of business in the district; (2) that physical place of business must be regular and established; and (3) that place of business must be the defendant's. *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). Metrom fails to make a single allegation that could possibly support even a single one of these factors; in fact, Metrom's Complaint is wholly devoid of any allegations purportedly showing a regular and established place of business of Piper in this district. Metrom's complete failure to even attempt to meet its burden of pleading venue should end the inquiry.

Moreover, Piper *does not* have a regular and established place of business in the District of Massachusetts under the Federal Circuit's test. It has no office or other physical presence in Massachusetts, whether through owning or leasing premises there. Doherty Dec. at ¶ 4. Further, Piper has never had a telephone number or listing in Massachusetts, nor maintained bank accounts in the state. *Id*. Other than a single remote employee who worked from his residence based on his own personal choice, Piper did not have any employees, officers, directors, sales or other representatives in Massachusetts as of the time Metrom filed its Complaint. *Id*. at ¶ 6. Thus, Metrom has not, and cannot, allege that Piper has a regular and established place of business in Massachusetts.

The presence of Piper's single, remote employee in Massachusetts based on his own personal choice does not support finding a regular and established place of business of Piper under any part of the Federal Circuit's test under *In re Cray*, let alone all three parts as required. As to

the first factor, Metrom has not identified any physical place within this district where Piper allegedly conducts business. *In re Cray*, 871 F.3d at 1362 (requiring a "physical, geographical location in the district from which the business of the defendant is carried out" to meet the first requirement). That a single employee may be found in this district working from his personal residence is insufficient to establish a physical place, particularly where, as here, Piper's business model is not built on employees all working from home (rather, the majority of its employees work at its San Diego headquarters). *Id*. at 1362-63; *see also Clark v. DocuSign, Inc*., No. 21-CV-1007 (DLF), 2022 WL 16985185, at *2 (D.D.C. Nov. 15, 2022) (finding failure to meet physical place requirement even where nine to twenty employees lived in the district working from home offices, but defendant's business model is not built on employees who all work from home); *Rosco, Inc. v. Safety Vision LLC*, No. 19-cv-8933, 2020 U.S. Dist. LEXIS 171830, 2020 WL 5603794, at *3 (S.D.N.Y. Sept. 18, 2020) (finding employee home did not constitute physical place of business); *C.R. Bard, Inc. v. Smiths Med. ASD, Inc.*, No. 12-cv-36, 2020 U.S. Dist. LEXIS 215189, 2020 WL 6710425, at *8, *12 (D. Utah Nov. 16, 2020) (finding no physical place of business because the defendant's "business model does not contemplate all employees working from home, and for those who do, ... does not treat their home offices as places of business"); Doherty Dec. at ¶ 5. Further, as discussed above, the facts show that there is no physical location in this district where Piper conducts business. *Id.* at ¶ 4.

Metrom similarly cannot meet the second *In re Cray* requirement that any such physical place of business must be regular and established. The place of business must be both "regular," which means that it operates in a "steady[,] uniform[,] orderly [, and] methodical" manner, and "established," which means that it is not transient but instead "settle[d] certainly, or fix[ed] permanently." *In re Cray*, 871 F.3d at 1362-63. Importantly, if an employee who works out of his

home "can move his or her home out of the district at his or her own instigation, without the approval of the defendant, that would cut against the employee's home being considered a place of business of the defendant" that is regular and established. *Id*. at 1363.

Such is precisely the case here, where Piper's only employee in the district was there on his own volition, was not incentivized to be there, and could move out of the district at will, without Piper's approval. Doherty Dec. at ¶ 5. Here, as in *In re Cray*, there is "no evidence that the employee['s[] location in the [District is] material to [the defendant]," or that employees in the District serve customers in the District. *In re Cray Inc.*, 871 F.3d at 1365; *see also Clark*, 2022 WL 16985185 at *2 (finding plaintiff failed to show that the homes of employees in the district met the second requirement because it had not shown the work done by employees in their homes was "fixed permanently" to the District, including that employment was not incentivized or conditioned on residence there) (citing *In re Cray*, 871 F.3d at 1363); *IngenioShare, LLC v. Epic Games, Inc.*, No. 21-cv-663, 2022 U.S. Dist. LEXIS 48278, 2022 WL 827808, at *4 (W.D. Tex. Mar. 18, 2022) (even where (unlike here) defendant restricted locations for remote employees, such restrictions did not create a regular and established place of business in employees' homes because "those restrictions are not district specific"); *Automated Packaging Sys., Inc. v. Free-Flow Packaging Int'l, Inc.*, No. 5:14-CV-2022, 2018 WL 400326, at *8 (N.D. Ohio Jan. 12, 2018); (finding no evidence to support "regular and established" place of business where defendant's employees working from their homes within the district were not required to live within the district). Where, as here, the majority of Piper's employees work at its San Diego headquarters rather than remotely, the Massachusetts employee could move freely in or out of the state without regard to (and with no impact on) his employment with Piper, and his presence was immaterial to it, this requirement is not met.

Finally, even if the Court were to consider a single remote employee's home a regular and established physical place of business under the above two requirements, Metrom cannot show the third requirement – that it is a place *of the defendant*. *In re Cray*, 871 F.3d at 1363 ("As the statute indicates, it must be a place *of the defendant*, not solely a place of the defendant's employee. […] Thus, the defendant must establish or ratify the place of business. It is not enough that the employee does so on his or her own.").  In determining whether a location is the "place of the defendant," relevant considerations include whether the defendant (i) "owns or leases the place or exercises other attributes of possession or control over the place;" or (ii) "conditions employment on an employee's continued residence in the district or the storing of materials at a place in the district so that they can be distributed or sold from that place." *Id*. at 1363. Courts may also consider marketing, advertising, or other indications that a "defendant itself holds out a place [in the district] for its business, but "the mere fact that a defendant has advertised that it has a place of business or has even set up an office is not sufficient; the defendant must actually engage in business from that location." *Id.* at 1363-64.

None of these considerations suggests that this requirement is met by Piper's single remote employee in Massachusetts, for whom Piper did not own, lease or exercise control over his home (nor provide reimbursement or payment for it), whose location was by mere happenstance, whose employment was not conditioned in any way on continued residence or storing of materials, and whose residence Piper never listed anywhere or otherwise held out to be a place of its business. *See* Doherty Dec. at ¶ 5; *see also* Dkt. 2 at ¶ 30 (Metrom's allegation that Piper listed *other* locations on its website including New York, Delaware, Texas, and Georgia, but not Massachusetts).  The employee's personal residence was not a place *of Piper*.  *See also, e.g*., *NetSoc, LLC v. Chegg Inc.,* No. 18 Civ. 10262 (RA), 2019 WL 4857340, at *3 (S.D.N.Y. Oct.

2, 2019) (rejecting suggestion that "the home of the single ... employee who worked from there, at the time this suit was filed, constitutes a place of business belonging to [defendant]"); *Zaxcom Inc. v. Lectrosonics, Inc.*, No. 17 Civ. 3408 (NGG) (SJB), 2019 WL 418860, at *5-7 (E.D.N.Y. Feb. 1, 2019) (finding that remote employee's home did not constitute a place of business of the defendant under Section 1400(b)).

Applying the *In re Cray* factors here, it is clear that Piper has no physical place of business in this district.  For at least these reasons, Metrom cannot establish any facts supporting a single one of the Federal Circuit's requirements, let alone all three requirements.  Because Metrom cannot bear its burden of establishing proper venue, dismissal is proper.

### B. Alternatively, the Court Should Transfer Plaintiff's Claims against Piper to the Southern District of New York

Because venue is improper under § 1400(b), 28 U.S.C. § 1406(a) authorizes this Court to dismiss the lawsuit.  Piper respectfully requests that this Court dismiss this lawsuit without prejudice, pursuant to 28 U.S.C. § 1406(a). *See, e.g., Niazi v. St. Jude Med. S.C., Inc.*, No. 17-cv-183-JDP, 2017 WL 5159784, at *5 (W.D. Wisc. Nov. 7, 2017) (dismissing case for improper venue); *BillingNetwork Patent, Inc. v. Modernizing Med.*, No. 17 C 5636, 2017 WL 5146008, at *4 (N.D. Ill. Nov. 6, 2017) (dismissing case for improper venue).

Alternatively, if the Court believes it to be in the interests of justice, the Court may transfer this case to a district in which this case could have been brought. 28 U.S.C. § 1406(a).  Metrom already has a case pending against Piper in the U.S. District Court for the Southern District of New York, where the parties have agreed upon venue and jurisdiction, asserting the same '131 Patent that Metrom asserts here and in which Metrom has repeatedly represented to both Piper and the New York Court that it will amend its claims to add the '738 Patent.  *See Metrom Rail, LLC v. Ground Transportation Systems USA, Inc. et al.*, Case No. 1:23-cv-02920-DLC (S.D.N.Y.).  Thus,

18

Metrom's claims against Piper could have been brought there and transfer to that Court is appropriate, particularly as the interests of justice would thereby be served by party and judicial efficiency given Metrom's long-pending claims relating to the same Asserted Patents.

## VI.   CONCLUSION

For at least the foregoing reasons, this Court should dismiss Metrom's claims against Piper. First, the Court should dismiss Metrom's claims against Piper because venue is improper in this district.   Piper is neither resident nor has a "regular and established place of business" in Massachusetts as required under the patent venue statute 28 U.S.C. § 1400(b).   Second, this Court should also dismiss Metrom's Complaint in its entirety for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).   Piper, therefore, respectfully requests that the Court dismiss Metrom's claims in their entirety or, in the alternative, transfer the claims against Piper to the District Court for the Southern District of New York pursuant to 28 U.S.C. § 1406(a).


Dated: July 23, 2025                          Respectfully submitted,

                                              */s/ Andrea L. Martin*
                                              TROUTMAN PEPPER LOCKE LLP
                                              Andrea L. Martin (BBO #666117)
                                              Andrea.Martin@troutman.com
                                              111 Huntington Avenue
                                              Boston, MA 02199
                                              (617) 239-0113
                                              (617) 227-4420 (fax)

                                              WISNIA PC
                                              Howard N. Wisnia (*Admitted pro hac vice*)
                                              12636 High Bluff Dr., Suite 400
                                              San Diego, CA 92130
                                              Telephone: (858) 461-0989
                                              Howard@wisnialaw.com

                                              DORITY & MANNING, P.A.
                                              Nicole S. Cunningham (*Admitted pro hac vice*)
                                              2869 Historic Decatur Road

San Diego, CA 92106
Telephone: (864) 271-1592
ncunningham@dority-manning.com

Steven Moore (*Admitted pro hac vice*)
2869 Historic Decatur Road
San Diego, CA 92106
Telephone: (800) 815-6705
smoore@dority-manning.com

*Counsel for Piper Networks, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, July 23, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

*/s/ Andrea L. Martin*
Andrea L. Martin