UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| METROM RAIL, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 25-cv-11446-ADB |
| | * | |
| MASSACHUSETTS BAY | * | |
| TRANSPORTATION AUTHORITY and | * | |
| PIPER NETWORKS, INC., | * | |
| | * | |
| Defendants. | * | |
| | * | |

**<u>MEMORANDUM AND ORDER</u>**

BURROUGHS, D.J.

Metrom Rail, LLC ("Metrom") brings this patent-infringement action against the

Massachusetts Bay Transportation Authority ("MBTA") and Piper Networks, Inc. ("Piper," and

with the MBTA, "Defendants"), based on the MBTA having awarded Piper a contract to install a

railway collision avoidance system on the MBTA's Green Line system.  Before the Court are

Piper's motion to dismiss for improper venue and failure to state a claim or, in the alternative, to

transfer venue, [ECF No. 35], and the MBTA's motions to dismiss for failure to state a claim,

[ECF No. 40], and to sever and stay all claims against it, [ECF No. 54].  Metrom has also filed a

motion for a preliminary injunction, [ECF No. 22], and for expedited discovery, [ECF No. 23].

For the reasons articulated below, Piper's motion to dismiss or transfer is **<u>GRANTED</u>**, the

MBTA's motion to sever and stay is **<u>GRANTED</u>**, and all other motions are **<u>DENIED</u>** without

prejudice.

I.      BACKGROUND

    A.    Factual Background

        The following facts are drawn from the Complaint, the well-pleaded allegations of which

the Court accepts as true for purposes of these motions.  Turnley v. Banc of Am. Inv. Servs.,

Inc., 576 F. Supp. 2d 204, 211 (D. Mass. 2008).

        Metrom is an Illinois corporation based in Lakemoor, Illinois, that operates "in the area

of decentralized train control."  [ECF No. 2 ("Complaint" or "Compl.") ¶ 8].  As relevant here,

Metrom has developed train collision avoidance systems, and secured several patents for this

technology, including U.S. Patent No. 9,731,738 (the "'738 Patent") and U.S. Patent No.

9,043,131 (the "'131 Patent").  [Id. ¶¶ 14, 22].  Generally speaking, the technology works

through "carborne units" installed in trains that communicate with carborne units in other trains

and wayside equipment to prevent collisions.  See [id. ¶¶ 12–14, 19–21].  Metrom initially

focused its collision avoidance technology for use on railroad maintenance-of-way vehicles, and

the technology has been used on over 3,000 such vehicles in the United States and Canada since

its introduction in 2012.  [Id. ¶¶ 12–15].  Starting in 2013, however, Metrom "began exploring

ways" to expand the use of its technology to the mass transit context, [id. ¶ 16], and, "[o]ver

time, Metrom has bid for and won several projects for train collision avoidance systems," [id.

¶ 23].  Metrom "frequently teams with larger integrators like Parsons Transportation Group, Inc.

("Parsons") . . . when bidding for projects," and provides these integrators with access to the

technical details of its technology.  [Id. ¶ 24].

        Piper is a Delaware corporation headquartered in San Diego, California, with locations in

New York, Delaware, Texas, and Georgia, that "holds itself out as a rail engineering solutions

provider and systems integrator."  [Compl. ¶¶ 29–31].  It did not enter the sector until after

Metrom had "developed, introduced, and proved the viability" of its technology, and did not file patent applications for its own technology until "about September of 2019," that is, "well after" Metrom had introduced the technology. [Id. ¶¶ 32–33]. Piper's technology includes an "Automatic Train Protection-Overlay . . . solution" that uses a "Rail Positioning System." [Id. ¶¶ 34–35]. Similar to Metrom's technology, Piper's technology relies on "carborne devices" and "wayside anchors," the interaction of which "facilitates the geolocation of the train." [Id. ¶¶ 37–39].

In April 2014, the MBTA issued an invitation for proposal for a prototype demonstration of a light rail collision avoidance system. [Compl. ¶ 46]. Metrom "submitted a confidential proposal and successfully demonstrated certain components of a collision avoidance system for the MBTA." [Id. ¶ 47]. In October 2016, the MBTA issued a request for proposals for a "Green Line Train Protection System." [Id. ¶ 48]. Metrom, working with Parsons, was among the bidders, but another bidder was awarded the project. [Id. ¶ 50]. "After many delays," the MBTA cancelled the project because the other bidder was unable to deliver on the contract requirements. [Id.].

On June 7, 2024, the MBTA issued a new request for proposals for a "stand-alone, non-vital overlay system to provide a Green Line Train Protection System" designed "to prevent collisions between trains and to stop Green Line Vehicles before they pass a Red Signal." [Compl. ¶ 51]. Bid submissions were confidential, but Metrom alleges, "[u]pon information and belief," that Piper submitted a bid, [id. ¶ 57], and then, on February 26, 2025, the MBTA board approved a $113 million contract with Piper for its Green Line Train Protection System, [id. ¶ 66]. Piper had previously hired two people who worked for Parsons on Metrom's technology, making one of them "the lead Piper representative on its project for the MBTA." [Id. ¶ 26].

3

Metrom "believes . . . that Piper used the former Parsons engineers to develop and field its own collision avoidance system that mimics the systems previously developed by Metrom," [id. ¶ 27], and further that, "[i]n addition to offering infringing systems to the MBTA . . . Piper has offered infringing systems to other transit agencies or rail operators," [id. ¶ 36].

### B.   Procedural History

Metrom initiated this lawsuit on May 21, 2025, asserting two claims of patent infringement.  [Compl.].  On June 27, 2025, Metrom moved for a preliminary injunction, asking the Court to "enjoin[] Piper from further infringing Metrom's Asserted Patents through continued bids and offers to sell and develop devices based on its infringing GLTPS," [ECF No. 22 at 2], and for expedited discovery in aid of its motion for a preliminary injunction, [ECF No. 23].  On July 9, 2025, the parties jointly proposed a briefing schedule for the pending motions, under which the parties would first brief the motion for expedited discovery and then the motion for a preliminary injunction, [ECF No. 25], which the Court approved, [ECF No. 26].  On July 23, 2025, after the discovery motion was fully briefed, see [ECF Nos. 31, 34], Piper filed a motion to dismiss for failure to state a claim and improper venue, or in the alternative, to transfer venue, [ECF No. 35]; see [ECF Nos. 42, 48], and the MBTA filed a motion to dismiss for failure to state a claim, [ECF No. 40]; see [ECF Nos. 42, 52].  Then, on September 24, 2025, the MBTA filed a motion to sever and stay all claims against it, [ECF No. 54]; see [ECF Nos. 57, 61].  On October 8, 2025, Metrom filed an unopposed motion to extend the date for filing supplemental

papers in support of its motion for a preliminary injunction until after the Court ruled on its

discovery motion, [ECF No. 56], which the Court granted on October 9, 2025, [ECF No. 58].[1]

## II.    DISCUSSION

### A.    Piper's Motion to Dismiss or Transfer

Piper moves to dismiss the Complaint for failure to state a claim and for improper venue,

requesting, as an alternative to dismissal, that the Court transfer Metrom's claims against Piper to

the Southern District of New York.  [ECF No. 35].  Metrom opposes this motion, arguing that it

has stated a claim and that venue is proper as to Piper in this District.  [ECF No. 42].

Courts ordinarily address procedural issues, such as venue, before reaching the merits of

a civil action.  See, e.g., Krick v. Raytheon Co., 695 F. Supp. 3d 202, 210 (D. Mass. 2023).  28

U.S.C. § 1406(a) and Federal Rule of Civil Procedure 12(b)(3) authorize courts to dismiss a case

for improper venue or to transfer it, in the interest of justice, to a district or division where it

could have been brought.  Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex., 571

U.S. 49, 55 (2013) (noting that 28 U.S.C. § 1406(a) and Rule 12(b)(3) "authorize dismissal only

when venue is 'wrong' or 'improper' in the forum in which it was brought"); id. at 56 (noting

that if "venue is improper . . . the case must be dismissed or transferred under § 1406(a)); see

also In re Micron Tech., Inc., 875 F.3d 1091, 1096 (Fed. Cir. 2017) (noting applicability of

§ 1406(a) to patent cases).  "Where there are multiple defendants, venue must be proper as to

---

[1] The Court takes judicial notice of the fact that Metrom is currently suing Piper, among others, in the Southern District of New York for patent infringement, including infringement of the '131 Patent, based on the New York Metropolitan Transit Authority's award of a contract to suppliers working with Piper.  Compl., ECF No. 1, Metrom Rail, LLC v. Hitachi Rail GTS USA Inc., No. 23-cv-02920 (S.D.N.Y. March 22, 2023).  That litigation is currently stayed pending an ongoing IPR appeal before the Federal Circuit.  See Memo Endorsement, ECF No. 51, Metrom Rail, LLC v. Hitachi Rail GTS USA Inc., No. 23-cv-02920 (S.D.N.Y. March 3, 2025); see also Metrom Rail, LLC v. Siemens Mobility, Inc., No. 24-2223 (Fed. Cir.).

each." Krick, 695 F. Supp. 3d at 210. "[A]ll well-pleaded allegations in the complaint bearing on the venue question generally are taken as true, unless contradicted by the defendant's affidavits" and "[a] district court may examine facts outside the complaint to determine whether its venue is proper." Turnley, 576 F. Supp. 2d at 211 (quoting 5B Wright & Miller, Federal Practice & Procedure § 1352 (3d ed. 2004)).

Under 28 U.S.C. § 1400(b), "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Although its language is permissive, § 1400(b) "is the sole and exclusive provision controlling venue in patent infringement actions." Fourco Glass Co. v. Transmirra Prods. Corp., 353 U.S. 222, 229 (1957); see also In re Cray Inc., 871 F.3d 1355, 1360 (Fed. Cir. 2017) ("Section 1400(b) . . . constitutes the exclusive provision controlling venue in patent infringement proceedings." (citation modified) (quoting TC Heartland LLC v. Kraft Foods Grp. Brands LLC, 581 U.S. 258, 265 (2017)). The plaintiff has the burden of establishing proper venue under § 1400(b). In re ZTE (USA) Inc., 890 F.3d 1008, 1013 (Fed. Cir. 2018). For purposes of § 1400(b), "a domestic corporation 'resides' only in its State of incorporation." TC Heartland, 581 U.S. at 262. Because Piper is incorporated in Delaware, see [Compl. ¶ 3], Metrom must show that Piper committed acts of infringement and has a regular and established business in the District of Massachusetts to establish venue.[2]

---

[2] The Federal Circuit has not decided at which point in time venue must be analyzed, see In re Google LLC, 949 F.3d 1338, 1345 n.1 (Fed. Cir. 2020), and lower courts are split between the "filing date approach," which looks to the facts at the time the complaint is filed, and the "accrual date approach," which looks to the facts as of the time the claim accrued, provided that the complaint is filed within a reasonable time of accrual, Square One Choices Inc. v. Ditec Sols.

To show that a defendant has a regular and established place of business, a plaintiff must show that (1) there is "a physical place in the district"; (2) it is "a regular and established place of business"; and (3) it is "the place of the defendant." In re Cray, 871 F.3d at 1360. All three requirements must be satisfied for venue to be proper under § 1400(b). Id. For (1), "[w]hile the 'place' need not be a 'fixed physical presence in the sense of a formal office or store,' there must still be a physical, geographical location in the district from which the business of the defendant is carried out." Id. at 1362 (quoting In re Cordis Corp., 769 F.2d 733, 737 (Fed. Cir. 1985)). For (2), "a 'place of business' generally requires an employee or agent of the defendant to be conducting business at that place." In re Google LLC, 949 F.3d 1338, 1344 (Fed. Cir. 2020). "[W]hile a business can certainly move its location, it must for a meaningful time period be stable, established," which means that "sporadic activity cannot create venue." In re Cray, 871 F.3d at 1362–63. Moreover, to establish venue based on an agency relationship, a plaintiff must show that the defendant exercised "interim control" over its agents, that is, that it "ha[d] the right

_____

LLC, No. 22-cv-07680, 2023 WL 5277869, at *5 (S.D.N.Y. Aug. 16, 2023). Courts that apply the accrual rule typically consider a defendant's pre-filing activity, "driven by a desire to prevent defendants from avoiding suit in a given venue by retreating from the district after committing acts of infringement." C.R. Bard, Inc. v. AngioDynamics, Inc., No. 12-cv-00035, 2020 WL 6710423, at *8 (D. Utah Nov. 16, 2020). One recent district court decision, however, considered post-filing activity, reasoning that, because patent infringement is a continuing tort, "each of the alleged 'infringing activities gives rise to a cause of action that dates from the moment of infringement.'" Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd., 402 F. Supp. 3d 450, 456 (N.D. Ill. 2019). The Court is skeptical that the accrual rule is consistent with the text of § 1400(b), which requires patent cases to be brought where the defendant "has" a regular and established place of business. Moreover, Motorola appears to be an atypical application of the accrual rule, and one that threatens to significantly expand venue, contrary to the Supreme Court's repeated admonitions "against a broad reading of the patent venue statute." In re Volkswagen Grp. of Am., Inc., 28 F.4th 1203, 1208 (Fed. Cir. 2022). Accordingly, although it is not clear whether Metrom is alleging ongoing infringement, the Court assumes that Piper's post-filing conduct is not relevant to the venue analysis, regardless of whether it applies the filing rule or the accrual rule.

throughout the duration of the relationship to control the agent's acts."  In re Volkswagen Grp. of Am., Inc., 28 F.4th at 1209 (quoting Pac. Gas & Elec. Co. v. United States, 838 F.3d 1341, 1360 (Fed. Cir. 2016)).  And for (3), "the defendant," and not merely the defendant's employee, "must establish or ratify the place of business."  In re Cray, 871 F.3d at 1363.  "Relevant considerations include whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place[,] . . . whether the defendant conditioned employment on an employee's continued residence in the district or the storing of materials at a place in the district so that they can be distributed or sold from that place," as well as "[m]arketing or advertisements . . . to the extent they indicate that the defendant itself holds out a place for its business."  Id.

Here, Piper argues that venue is not proper because, according to a July 22, 2025, affidavit submitted by its Associate Director of Human Resources, Piper does not have an office or other physical presence in Massachusetts and had only a single Massachusetts employee, who worked remotely and whose employment ended on the day the complaint was filed.  See [ECF No. 36 at 14–19]; [ECF No. 38 at 2–3].  Metrom responds that "Piper has had and will have multiple Massachusetts employees, and Piper has a place of business in Massachusetts as a contractual requirement with the MBTA."  [ECF No. 42 at 16].  In support, Metrom points to allegations and a February 25, 2025, MBTA slide deck related to the procurement process that suggest that Piper is required to (1) "furnish all labor, management, materials . . . which are necessary to complete the [w]ork," (2) "manage, integrate, and install" certain equipment, and (3) perform certain work starting in October 2024, and argues that "Piper must have some storage location for its equipment and testing supplies that has allowed it to help perform" that work.  [ECF No. 42 at 19–20]; [Compl. ¶¶ 55–56, 58, 67]; [ECF No. 24-6 (slide deck)].  Metrom

also quotes from the MBTA's project specifications, which require that "the Contractor" furnish, equip, and maintain a "Project Field Office" at a location dictated by the MBTA, [ECF No. 42 at 8]; [ECF No. 43-1 at 9–10], and refers to a video of a February 25, 2025, MBTA Board of Directors meeting, at which MBTA representatives stated that Piper had "supported the installation of over 90 [wayside] anchors . . . and equipped four of our green line cars . . . with Carborne equipment" and that Piper "[was] establishing a local office and do[es] have Massachusetts employees," [ECF No. 42 at 20–21]; see also [ECF No. 43-8 at 3, 5].[3] Finally, Metrom attaches materials showing that Piper advertised jobs for employees working in the Boston metropolitan area; these materials, however, are either undated or post-date the filing of the Complaint. [ECF Nos. 43-2, 43-3, 43-4, 43-5, 43-6]; [ECF No. 50-2].

Metrom's allegations are insufficient to establish venue under § 1400(b). Apart from Metrom's speculation about "storage location[s]" that Piper "must have," [ECF No. 42 at 20], there is no evidence that Piper had a "physical, geographical location in the district" from which it carried out its business when the Complaint was filed. In re Cray, 871 F.3d at 1362. Metrom argues that Piper began its work for the MBTA in October 2024, [ECF No. 42 at 19], but the statements by MBTA officials upon which Metrom relies suggest that Piper was still in the process of "establishing" a local office in February 2025, [id. at 21]. There is also little to no evidence that, at or prior to the filing of the complaint, any such local office was "regular and established," id. at 1360, since Piper had no employees or agents conducting its business at any such place in Massachusetts, In re Google LLC, 949 F.3d at 1345, and, to the extent it may have

_____

[3] The Court notes that the transcript, [ECF No. 43-8], is not entirely accurate, and bases its transcription on its review of the video itself, MBTA Board of Directors – February 25, 2025, (Vimeo, Feb. 25, 2025), https://vimeo.com/event/4867722.

had any such agents, there is no evidence that Piper exercised sufficient control over them to establish venue, In re Volkswagen, 28 F.4th at 1209.  The vague statements by MBTA officials in February 2025 that Piper was "establishing" a Massachusetts office and "d[id] have Massachusetts employees" are not, on their face, inconsistent with Piper's sworn affirmation that, when the Complaint was filed in May 2025, Piper had a single employee and no office, and the Court is not prepared to rely on the MBTA officials' second-hand statements over a sworn affidavit by Piper's Associate Director of Human Resources.  Finally, there is no evidence that Piper had "establish[ed] or ratif[ied] the place of business" by the time the Complaint was filed. In re Cray, 871 F.3d at 1363.  Accordingly, the Court finds that venue is improper in this District as to Piper.

Metrom asks that, "[i]f the Court believes Metrom has not established venue on Piper based on its physical presence," it order Piper to provide venue discovery.  [ECF No. 42 at 22]; see also [ECF No. 43-7 (proposed requests for production)].  Whether to order venue discovery lies within the Court's broad discretion.  See, e.g., AudioPod IP, LLC v. Amazon.com, Inc., No. 24-cv-00406, 2025 WL 679044, at *18 n.10 (E.D. Va. Mar. 3, 2025); Delta Elecs., Inc. v. Vicor Corp., 724 F. Supp. 3d 645, 656 (W.D. Tex. 2024); New Berry Inc. v. Smith, No. 19-cv-00159, 2021 WL 411154, at *2 (N.D. Ind. Feb. 5, 2021); Green Source Holdings, LLC v. Ingevity Corp., No. 18-cv-01067, 2019 WL 1995402, at *5 (W.D. Ark. May 6, 2019); cf. United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 626 (1st Cir. 2001) (noting "trial court's broad discretion in determining whether to grant jurisdictional discovery").  Although there is considerable uncertainty regarding the scope of venue discovery in patent cases, see In re Cray, 871 F.3d at 1359, courts have typically required a prima facie showing that venue is proper or that discovery is reasonably likely to yield evidence supporting venue, see, e.g., TrackThings LLC v. Netgear,

Inc., No. 21-cv-05440, 2022 WL 2829906, at *12 (S.D.N.Y. July 20, 2022); Galderma

Laboratiores, L.P. v. Medinter US, LLC, No. 18-cv-01892, 2019 WL 13114421, at *5 n.4 (D.

Del. Oct. 25, 2019); Unity Opto Tech. Co. v. Lowe's Home Centers, LLC, No. 18-cv-00027,

2018 WL 2087250, at *3 (W.D. Wis. May 4, 2018).  Here, Metrom's assertion that Piper has a

regular and established place of business in this District is based on little more than speculation,

and the Court finds that Metrom has not made a prima facie showing of venue.  Nor does the

Court find that Metrom's proposed (overly) wide-ranging discovery, [ECF No. 43-7], is likely to

yield evidence substantially supporting venue, since Piper had no employees working at any

physical location in Massachusetts at the time the Complaint was filed.  Accordingly, Metrom's

request for venue discovery is denied.

Given that venue is improper as to Piper, the case must be dismissed or transferred under

28 U.S.C. § 1406(a).  Atl. Marine, 571 U.S. at 56.  The decision whether to dismiss or transfer is

left to the Court's discretion, but "venue transfer is ordinarily preferable to dismissal, both

because it is more efficient and because it reduces the risk of undue prejudice to the plaintiff

from having to file a new lawsuit."  Kaul v. Bos. Partners, Inc., No. 21-cv-10326, 2021 WL

3272216, at *2 (D. Mass. July 30, 2021) (quoting Johnson v. Gen Dynamics Info. Tech., Inc.,

675 F. Supp. 2d 236, 242 (D.N.H. 2009)), aff'd sub nom., Kaul v. Bos. Partners Glob. Invs., Inc.,

No. 21-cv-01686, 2024 WL 3963961 (1st Cir. Feb. 9, 2024).  Here, Metrom is already litigating

patent infringement claims against Piper in the Southern District of New York, including a claim

that Piper has infringed the '131 Patent, see [ECF No. 36 at 19], and Piper does not dispute that

venue is proper there, see generally [ECF No. 42].  Accordingly, the Court finds that transfer of

Metrom's claims against Piper to the Southern District of New York is proper and in the interests

of justice.  The Court will leave resolution of Piper's Rule 12(b)(6) motion to the transferee

court, and accordingly denies Piper's motion to dismiss for failure to state a claim without prejudice and with leave to renew upon transfer to the Southern District of New York.  See, e.g., Collision Commc'ns, Inc. v. Nokia Sols. & Networks Oy, 485 F. Supp. 3d 282, 299 (D. Mass. 2020).

### B.    MBTA's Motion to Sever and Stay

The MBTA moves to sever Metrom's claims against it and stay them until a final judgment is entered on Metrom's claims against Piper, arguing that a stay would not unduly prejudice Metrom, would simplify the issues in question, and that the case is at an early stage; it also argues that, under the "customer-suit exception," Metrom's suit against Piper should take precedence over its suit against the MBTA, Piper's customer.  [ECF No. 55 at 2–4, 5–7, 7–9, 9–10].  Metrom responds that a stay would prejudice it by preventing it from stopping the "proliferation of infringement" and "frustrate the discovery process," lead to duplicative litigation, and slow the litigation of the asserted patents; it also contends that the customer-suit exception should not apply.  [ECF No. 57 at 12–15, 15–18, 18, 19–23].

As an initial matter, the Court finds it appropriate to sever Metrom's claims against the MBTA in light of its decision to transfer Metrom's claims against Piper.  The MBTA did not argue in its motion to dismiss that venue was not proper in this District as to Metrom's claims against it, see [ECF No. 41], and has thus waived any venue-based defense, Fed. R. Civ. P. 12(h)(1)(A).  Moreover, none of the parties argues that venue is proper in the Southern District of New York as to the MBTA, and severing Metrom's claims and retaining jurisdiction over its claims against the MBTA is thus appropriate to facilitate transfer.  See In re Nintendo Co., Ltd., 544 F. App'x 934, 940 (Fed. Cir. 2013) ("Rule 21 provides courts with considerable latitude to order severance solely for purposes of facilitating transfer."); Get In Shape Franchise, Inc. v.

12

TFL Fishers, LLC, 167 F. Supp. 3d 173, 195 (D. Mass. 2016) ("If venue is not proper for all of the claims and defendants, the Court may (1) dismiss the action pursuant to 28 U.S.C. § 1406(a), (2) transfer the entire case to another district where venue is proper for all claims and defendants, or (3) sever the claims in the case, retain jurisdiction over those for which venue is proper, and transfer the other claims.").

The Court also finds it appropriate to stay Metrom's claims against the MBTA.  The decision to stay litigation pending resolution of parallel proceedings is committed to this Court's "sound discretion."  In re Med. Components, Inc., 535 F. App'x 916, 918 (Fed. Cir. 2013); see also Landis v. N. Am. Co., 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").  In patent cases, courts typically consider three factors when deciding if a stay is appropriate: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay would simplify the issues in question and trial of the case; and (3) the stage of the litigation."  A.L.M. Holding Co. v. All States Materials Grp. Inc., 784 F. Supp. 3d 417, 420 (D. Mass. 2025) (quoting In re Body Sci. LLC Pat. Litig., No. 12-md-02375, 2012 WL 5449667, at *3 (D. Mass. Nov. 2, 2012)).  The determination is "largely case specific" and based on "the totality of the circumstances."  Chr. Hansen HMO GmbH v. Glycosyn LLC, 662 F. Supp. 3d 50, 53 (D. Mass. 2023).  "The party moving for the stay bears the burden of proving that a stay is appropriate."  A.L.M. Holding Co., 784 F. Supp. 3d at 420 (quoting Thakkar v. United States, 389 F. Supp. 3d 160, 171 (D. Mass. 2019)).

The MBTA also invokes the "customer-suit exception" to the first-to-file rule, under which "litigation against or brought by the manufacturer of infringing goods takes precedence

over a suit by the patent owner against customers of the manufacturer." Spread Spectrum Screening LLC v. Eastman Kodak Co., 657 F.3d 1349, 1357 (Fed. Cir. 2011) (quoting Katz v. Lear Siegler, Inc., 909 F.2d 1459, 1464 (Fed. Cir. 1990)).  This means that, "[g]enerally speaking," courts "stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum." Id.  In determining whether the exception applies, courts consider "1) whether the Customers are merely resellers; 2) whether the Customers agree to be bound by any decision in the Manufacturer's case; and 3) whether the Manufacturer is the sole source of infringing products." Chr. Hansen, 662 F. Supp. 3d at 53 (quoting In re Trs. of Bos. Univ. Pat. Cases, No. 13-cv-12327, 2014 WL 12576638, at *3 (D. Mass. May 16, 2014)).

The purpose of the customer-suit exception is to "avoid, if possible, imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute." In re Nintendo of Am., Inc., 756 F.3d 1363, 1365 (Fed. Cir. 2014) (quoting Codex Corp. v. Milgo Elec. Corp., 553 F.2d 735, 738 (1st Cir. 1977)); see also Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys., 458 F.3d 1335, 1343 (Fed. Cir. 2006) ("[T]he guiding principles in the customer suit exception cases are efficiency and judicial economy.").  Thus, even in cases where the exception is not "formally applicable"—for example, where the plaintiff sues the manufacturer first or sues both the manufacturer and the customer in the same forum— courts may consider the principles underpinning the exception in deciding whether to issue a stay. A.L.M. Holding Co., 784 F. Supp. 3d at 420 & n.2; see also In re Nintendo, 756 F.3d at 1365 ("While the circumstances of this case differ from those of the customer-suit exception, we agree with the district court that the same general principles govern . . . ."); In re Google Inc., 588 F. App'x 988, 991 (Fed. Cir. 2014) (vacating denial of stay in case that district court

reasoned was "far outside the usual 'customer-suit exception'" and endorsing "flexible approach, including staying proceedings if the other suit is so closely related that substantial savings of litigation resources can be expected"); In re Trs. of Bos. Univ. Pat. Cases, 2014 WL 12576638, at *3 (granting limited stay based on "the rationale behind the customer suit exception and the totality of factors in this case, including efficiency, judicial economy, and preventing prejudice").

Here, the Court finds that the MBTA has carried its burden of showing that a stay of Metrom's claims against it is appropriate under the traditional stay factors.  With respect to undue prejudice, Metrom argues that a stay in this action would "compound" the ongoing delay in the New York litigation, would vitiate its efforts to prevent its technology from being used as a reference design, and would frustrate the discovery process, since "the accused system and MBTA-specific information relating to its implementation reside in this venue."  [ECF No. 57 at 12–14].  The Court is not persuaded.  While a stay may, to some extent, hamper Metrom's attempt to obtain discovery from the MBTA and delay any recovery against the MBTA, it is not clear that a stay would present a tactical disadvantage to Metrom, not least because Metrom remains able to seek discovery from, and preliminary injunctive relief against, Piper directly in the transferee court.  The Court also notes that Metrom's motion for a preliminary injunction, which was designed to combat Piper's use of the MBTA system as a reference design, was directed only at Piper, not the MBTA, see [ECF No. 22 at 2], which undermines Metrom's argument that a stay as to the MBTA would cause undue prejudice.  With respect to narrowing the issues, while the New York litigation will not necessarily resolve all the issues in this case, see [ECF No. 57 at 15–16]; [ECF No. 61 at 2], it has the potential to resolve major issues concerning Metrom's claims against the MBTA, In re Trs. of Bos. Univ. Pat. Cases, 2014 WL 12576638, at *3.  Specifically, if Piper prevails on its invalidity or non-infringement defenses in

the New York litigation, that decision would, under principles of collateral estoppel, preclude Metrom from recovering against the MBTA.  Id.  Finally, Metrom does not dispute that this case is at a very early stage, with no discovery having taken place.

In light of its conclusion that a stay is warranted under the traditional stay factors, the Court need not address the MBTA's argument that the customer-suit exception applies.  It notes, however, that, although the exception does not appear to be formally applicable to this case, see A.L.M. Holding, 784 F. Supp. 3d at 420 n.2; Chr. Hansen, 662 F. Supp. 3d at 55; Privasys, Inc. v. Visa Int'l, No. 07-cv-03257, 2007 WL 3461761, at *3 (N.D. Cal. Nov. 14, 2007) ("Where . . . [a] plaintiff has brought suit against both the supplier and its customers in the same suit and in the same district, the 'customer suit' exception does not apply."), and although the MBTA does not appear to satisfy all of the factors that courts typically consider in evaluating whether the exception applies, see [ECF No. 57 at 20–22], the Court's decision to stay litigation against the MBTA is consistent with the principles of efficiency and judicial economy that animate the exception, and reflects its preliminary impression, based on the filings in this case to date, including Metrom's motion for a preliminary injunction, that Piper is the "true defendant" in this litigation, Codex, 553 F.2d at 738.

### C.    Remaining Motions

The Court denies the parties' remaining motions without prejudice.  Specifically, there is no need for this Court to resolve Metrom's motion for a preliminary injunction, [ECF No. 22], which, as noted above, targets only Piper, not the MBTA.  See, e.g., Moog Inc. v. Skyryse, Inc., No. 22-cv-00187, 2022 WL 17720965, at *9 (W.D.N.Y. Dec. 15, 2022) (declining to address pending motion for preliminary injunction based on decision to transfer case under 28 U.S.C. § 1404(a)); Minn. Supply Co. v. Mitsubishi Caterpillar Forklift Am. Inc., 822 F. Supp. 2d 896,

915 (D. Minn. 2011) ("Because the Court has concluded that this action should not proceed here, plaintiff's motion for a preliminary injunction will be denied without prejudice to seeking such relief in the appropriate venue."). The same is true for Metrom's motion for expedited discovery in aid of its motion for a preliminary injunction. [ECF No. 23]. Finally, the Court defers resolution of the MBTA's motion to dismiss for failure to state a claim, [ECF No. 40], which is based on arguments that are, as the MBTA acknowledges, "substantially identical" to those made by Piper in its motion to dismiss, [ECF No. 41 at 5 n.1].

## III.    CONCLUSION

For the foregoing reasons, Piper's motion to dismiss or transfer, [ECF No. 35], is **GRANTED**. Metrom's claims against Piper are transferred to the Southern District of New York and Piper may renew its Rule 12(b)(6) motion in the transferee court. The MBTA's motion to sever and stay, [ECF No. 54], is **GRANTED**. Metrom's claims against the MBTA are stayed pending final judgment on Metrom's claims against Piper, without prejudice to subsequent motions to modify or vacate the stay for good cause shown. Metrom's motions for a preliminary injunction and to expedite discovery, [ECF Nos. 22, 23], are **DENIED** without prejudice. The MBTA's motion to dismiss, [ECF No. 40], is **DENIED** without prejudice and with leave to renew. The parties shall file status reports no less than every six months indicating the status of Metrom's litigation against Piper in the Southern District of New York, with the first such status report due on or before June 8, 2026.

SO ORDERED.

December 8, 2025

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE